David R. Wise (DW 3016)
Mackey Butts & Wise, LLP
319 Mill Street
Poughkeepsie, New York 12601
Tel: (845) 452-4000
Fax: (845) 454-4966
dwise@mbwise.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LISA CONGER,                                                        ECF CASE

                       Plaintiff,          **COMPLAINT AND**
   -against-                                                **JURY DEMAND**

WESCO DISTRIBUTION, INC.,                         Civil Action No.:

                 Defendant.      Electronically Filed
------------------------------------------------------------X

1.      Plaintiff Lisa Conger, by and through her attorneys, Mackey Butts & Wise, LLP, brings this action pursuant to the Equal Pay Act of 1963, amending the Fair Labor Standards Act ("EPA") and New York Labor Law ("NYLL") to recover wages and other damages based upon Plaintiff's disparate and lesser compensation paid to her on the basis of her gender, and in support alleges the following.

## JURISDICTION AND VENUE

2.      This Court has Federal question jurisdiction in that this action arises under federal statute 29 U.S.C. § 216(b).

3.      This Court has supplemental jurisdiction over the state law claim pursuant to 29 U.S.C. § 1367.

4.      Venue is proper in that Plaintiff performed the work at issue at Defendant's place of business located in the City of Poughkeepsie, Dutchess County, New York, which is located within this District, and Plaintiff resides within this District.

## PARTIES

5.      Plaintiff Lisa Conger is an adult individual who was formerly employed by Defendant.

6.      Upon information and belief, Defendant WESCO Distribution, Inc., is a foreign corporation duly formed and existing under the laws of the State of Delaware, and at all times relevant to this Complaint was authorized to do business in the State of New York.

7.      For all times relevant to this Complaint, Defendant was doing business under the assumed name Electra Supply Company ("Electra") in the City of Poughkeepsie, Dutchess County, New York.

8.      Upon information and belief, Defendant designated its Poughkeepsie, New York Electra location as Branch 1350.

9.      For all times relevant to this Complaint, Defendant has constituted an enterprise engaged in commerce, as defined by 29 U.S.C. § 203(s)(1), upon information and belief with a gross annual volume of business done of not less than $500,000, and with employees engaged in commerce as defined by 29 U.S.C. § 203(b).

10.      For all times relevant to this Complaint, Defendant's employees at its Branch 1350 engaged in commerce by regularly traveling between an among the States.

11.      For all times relevant to this Complaint, employees of Defendant at its Branch 1350 regularly used interstate wires when communicating between and among various States

12.     For all times relevant to this Complaint, Defendant has been an employer within the meaning of 29 U.S.C. § 206(d)(1).

13.     For all times relevant to this Complaint, Defendant has been an employer within the meaning of NYLL § 190(3).

## FACTS

14.     On or about December 26, 1984, Plaintiff commenced employment at Defendant's Branch 1350 as a Branch Operations Manager.

15.     Plaintiff was continuously employed at Defendant's Branch 1350 until April 1, 2020.

16.     During the entire tenure of her employ with Defendant, Plaintiff consistently performed all her job duties and responsibilities in an exemplary manner.

17.     During the entire tenure of her employ with Defendant, Plaintiff consistently received exemplary performance review evaluations.

18.     The Branch Operations Manager at Defendant's Branch 1350 answered to and was directly supervised by the Branch Manager.

19.     From during or about 2001 to during or about 2011, Randy Kelsey, a male, held the position of Branch Manager at Defendant's Branch 1350.

20.     Upon information and belief, during at least a significant portion of Mr. Kelsey's tenure as Branch Manager, his annual compensation by Defendant exceeded $100,000.

21.     From December 31, 1984 to during or about 2000, Larry McKeough, a male, held the position of Branch Manager at Defendant's Branch 1350.

{00208420 1}                                       3

22.     Upon information and belief, during at least a significant portion of Mr. McKeough's tenure as Branch Manager, his annual compensation by Defendant exceeded $100,000.

23.     In addition to his annual monetary compensation, Mr. McKeough was compensated with numerous stock options from Defendant.

24.     From on or about February 2012 to January 22, 2016, Lucia Granieri, a female, held the position of Branch Manager at Defendant's Branch 1350.

25.     Following the end of Ms. Granieri's employment as Branch Manager, Defendant did not hire another Branch Manager at its Branch 1350.

26.     Almost immediately following the end of Ms. Granieri's employment with Defendant, Plaintiff effectively functioned and was held accountable as Branch Manager of Defendant's Branch 1350 until the end of her employment on April 1, 2020.

27.     Beginning during or about January 2016, Plaintiff customarily and regularly performed numerous duties and responsibilities that were listed among the Primary Responsibilities of the Branch Manager Job Description prepared and maintained by Defendant.

28.     Among the Branch Manager primary duties and responsibilities customarily and regularly performed by Plaintiff from during or about January 2016 through the end of her employment on April 1, 2020, were the following:

        a.      Planned, developed and implemented specific actions and programs in accordance with Management Operations Plan.

        b.      Hired deployed and managed outside sales persons to provide coverage of total branch geographic market segments, while ensuring adequate potential for individual territory development.

   c.  Developed team-working relationship between all employees by clearly defining each member's primary and secondary responsibilities and how each related to others within the Branch.

   d.  Ensured adequate delegation of authority to Branch subordinates to carry out responsibilities and tasks.

   e.  Established and controlled pricing levels, while implementing policies and programs to improve margins.

   f.  Developed and maintained cooperative relationships consistence with good commercial policies with regarding to selected suppliers.

   g.  Assisted financial services with exercising policies pertaining to extension of credit, collection of accounts receivable, obtainment of acceptable days outstanding, and minimization of potential losses.

   h.  Oversaw inventory administration to ensure adequate stock and provide excellent customer service while maintaining an acceptable month's supply.

   i.  Ensured Branch was taking an active role in negotiating lower cost and extended payment terms from key suppliers.

   j.  Managed annual employee reviews based on performance against measurable objectives.

   k.  Regularly recruited, interviewed, hired, managed, reviewed, disciplined, promoted, and dismissed employees in all departments.

   l.  Regularly developed and implemented plans to provide premium customer service and review performance against objectives.

   m.  Prepared annual budgets and was held accountable for achieving branch objectives.

   n.  Prepared branch monthly sales forecasts and was held accountable for those objectives.

29.  Plaintiff undertook the above Branch Manager duties and responsibilities with the knowledge of Defendant.

30.  Plaintiff undertook the above Branch Manager duties and responsibilities with the consent of Defendant.

31.  Plaintiff undertook the above Branch Manager duties and responsibilities at the request of Defendant.

32.  Plaintiff performed the above Branch Manager duties and responsibilities in an exemplary manner.

33.  Defendant received significant financial benefits from Plaintiff's performance of the above Branch Manager duties and responsibilities.

34.  Plaintiff's performance of the above Branch Manager duties and responsibilities required equal skill as Randy Kelsey and Larry McKeough.

35.  Plaintiff's performance of the above Branch Manager duties and responsibilities required equal effort as Randy Kelsey and Larry McKeough.

36.  Plaintiff's performance of the above Branch Manager duties and responsibilities required equal responsibility as Randy Kelsey and Larry McKeough.

37.  Plaintiff performed the above Branch Manager duties and responsibilities under similar working conditions as Randy Kelsey and Larry McKeough.

38.     In February 2018, Plaintiff was recognized for her efforts as Employee of the Quarter by Defendant's Division Vice President.

39.     In September 2019, Branch 1350 underwent an internal company audit and received a score of 96, which was classified by Defendant as excellent.

40.     From during or about January 2016 to April 2020, Plaintiff performed substantially similar work to that undertaken by Randy Kelsey and Larry McKeough when they held the position of Branch Manager at Defendant's Branch 1350.

41.     At various times between January 2016 and April 2020, various managers of Defendant held Plaintiff out to the public as Branch Manager.

42.     The highest rate of annual compensation paid by Defendant to Plaintiff was $87,000.

## FIRST CAUSE OF ACTION
## WAGE DISCRIMINATION UNDER THE EPA

43.     Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

44.     While functioning as a Branch Manager by performing the above duties at Defendant's Branch 1350, Plaintiff was compensated significantly less than males Randy Kelsey and Larry McKeough were compensated as Branch Managers.

45.     The disparity in compensation between Plaintiff and Randy Kelsey and Larry McKeough was a consequence of Plaintiff's gender.

46.     The disparity in pay between Plaintiff and Randy Kelsey and Larry McKeough was willful on the part of Defendant.

47.     As a consequence of the willful underpayment of compensation, Plaintiff has incurred damages and Defendant is indebted to Plaintiff in the amount of unpaid compensation,

together with interest, liquidated damages and attorneys' fees and costs, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## WAGE DISCRIMINATION UNDER THE NYLL

48.      Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

49.      As a consequence of the willful underpayment of compensation, Plaintiff has incurred damages and Defendant is indebted to Plaintiff in the amount of unpaid compensation, together with interest, liquidated damages and attorneys' fees and costs, in an amount to be determined at trial.

## JURY DEMAND

50.      Plaintiff demands a trial by jury.

## RELIEF SOUGHT

51.      Plaintiff seeks judgment against the Defendant as follows:

      a.      An Order declaring that Defendant has violated the EPA;

      b.      An Order declaring that Defendant's violation of the EPA was willful;

      c.      An Order declaring that Defendant violated the NYLL;

      d.      An Order declaring that Defendant's violation of the NYLL was not in good faith;

      e.      An award of unpaid wages under the EPA and NYLL;

      f.      An award of liquidated damages under the EPA;

      g.      An award of liquidated damages under the NYLL;

      h.      All penalties available for violation of the EPA;

      i.      All penalties available for violation of the NYLL;

j.     An award of all costs of this action, and reasonable attorneys' fees and

disbursements incurred in connection with this action;

k.     Pre- and post-judgment interest as provided by law; and

l.     Such other relief that the Court deems just and proper.

Dated: July 29, 2020
       Poughkeepsie, NY

MACKEY BUTTS & WISE, LLP

By: _____
    David R. Wise (DW 3016)
    319 Mill Street
    Poughkeepsie, New York 12601
    Tel: (845) 452-4000
    Fax: (845) 454-4966
    dwise@mbwise.com
    *Attorneys for Plaintiff*